CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 2 0 2018

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| WILLIAM DAVID HURST, | ) |
| | ) Civil Action No. 7:17CV00473 |
| Plaintiff, | ) |
| | ) **MEMORANDUM OPINION** |
| v. | ) |
| | ) By: Hon. Glen E. Conrad |
| NANCY A. BERRYHILL, Acting | ) Senior United States District Judge |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claim for a period of disability and disability insurance benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423. Jurisdiction of this court is established pursuant to 42 U.S.C. § 405(g). As reflected by the memoranda and argument submitted by the parties, the issues now before the court are whether the Commissioner's final decision is supported by substantial evidence, or whether there is "good cause" to necessitate remanding the case to the Commissioner for further consideration. See 42 U.S.C. § 405(g).

The plaintiff, William David Hurst, was born on February 26, 1974. He completed his high school education and eventually graduated from college. (Tr. 39). Mr. Hurst has been employed as a hospital cleaner, security guard, and custodian. He worked for a contract cleaning service for part of 2015 and 2016 with the assistance of a job coach. (Tr. 17, 200, 278). However, the Administrative Law Judge determined that such employment did not reach the level of substantial gainful activity. (Tr. 17).

On September 26, 2013, Mr. Hurst filed an application for a period of disability and disability insurance benefits. In filing his current claim, Mr. Hurst alleged that he became disabled for all forms of substantial gainful employment on September 19, 2013, due to Asperger's

syndrome, attention deficit hyperactivity disorder (ADHD), and insomnia. (Tr. 205). Mr. Hurst now maintains that he has remained disabled to the present time. The record reveals that Mr. Hurst met the insured status requirements of the Act at all relevant times covered by the final decision of the Commissioner. See generally 42 U.S.C. §§ 416(i) and 423(a).

Mr. Hurst's application was denied upon initial consideration and reconsideration. He then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated November 2, 2016, the Law Judge also determined, after applying the five-step sequential evaluation process, that Mr. Hurst is not disabled. See 20 C.F.R. § 404.1520.[1] The Law Judge found that Mr. Hurst suffers from several severe impairments, including Asperger's syndrome, ADHD, hearing loss, depression, and anxiety, but that these impairments do not, either individually or in combination, meet or medically equal the requirements of a listed impairment. (Tr. 17–18). The Law Judge then assessed Mr. Hurst's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is able to understand, remember and carry out simple instructions in repetitive unskilled work. He should have no interaction with the general public and no more than occasional interaction with co-workers and supervisors. He would be able to respond appropriately to supervision, co-workers, and usual work situations. He should avoid fast-paced environments like those on an assembly line. He should have static job duties that remain fairly constant and avoid exposure to excessively loud background noise such as heavy traffic and jackhammers/construction equipment in the immediate work environment.

---

[1] The process requires the Law Judge to consider, in sequence, whether a claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and (5) if not, whether he can perform other work in the national economy. 20 C.F.R. § 404.1520. If a decision can be reached at any step in the sequential evaluation process, further evaluation is unnecessary. Id.

(Tr. 20). Given such a residual functional capacity, and after considering the testimony of a vocational expert, the Law Judge determined that Mr. Hurst is unable to perform any of his past relevant work. (Tr. 24). However, the Law Judge found that Mr. Hurst retains sufficient functional capacity to perform other work roles existing in significant number in the national economy. (Tr. 25). Accordingly, the Law Judge concluded that Mr. Hurst is not disabled, and that he is not entitled to a period of disability or disability insurance benefits. See 20 C.F.R. § 404.1520(g). The Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all available administrative remedies, Mr. Hurst has now appealed to this court.

While plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether plaintiff is disabled for all forms of substantial gainful employment. See 42 U.S.C. § 423(d)(2). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

On appeal, Mr. Hurst raises several arguments, including that the Law Judge improperly assessed the opinion evidence and erred in determining his residual functional capacity. After reviewing the record and considering the parties' arguments, the court finds "good cause" to remand the case to the Commissioner for further development and consideration. See 42 U.S.C. § 405(g).

The medical record establishes that Mr. Hurst suffers from a combination of severe nonexertional impairments. In September of 2012, Dr. George Wagner, a physician with New

3

Horizons Healthcare, diagnosed plaintiff with ADHD and insomnia. (Tr. 311). He prescribed trazodone, an antidepressant, which plaintiff continued to take at the time of the administrative hearing. (Tr. 46, 311). On November 12, 2013, Mr. Hurst presented to Dr. Alan Katz, a clinical psychologist, for a neuropsychological evaluation. (Tr. 321). Dr. Katz, who had previously evaluated plaintiff in 2001, noted that plaintiff has "a longstanding history of social anxiety that has been complicated by intermittent episodes of poorly modulated anger and reduced social judgment." (Tr. 321). Dr. Katz also noted that plaintiff exhibits "classic manifestations" of autism spectrum disorder or Asperger's syndrome, such as "social awkwardness, decreased insight and a non-verbal learning disability," and that other "complicating factors" include "lifelong depression, reduced stress tolerance and fears about his ability to maintain independent living." (Tr. 321). Based on clinical interviews, his review of existing records, and the results of a series of questionnaires and tests, Dr. Katz diagnosed plaintiff with autism spectrum disorder, Asperger's syndrome, a visual impairment, and right fronto-parietal deficits. (Tr. 327). More recent treatment records from New Horizons Healthcare also reflect diagnoses of Asperger's syndrome and depression, as well as moderate hearing loss in both ears. (Tr. 389, 400, 404, 405, 407).

The record contains several opinions regarding the impact of Mr. Hurst's impairments on his ability to work. At the conclusion of the initial neuropsychological evaluation, Dr. Katz noted that Mr. Hurst "would be well served by an application for Social Security benefits," but that he remained hopeful that plaintiff's "acquisition of benefits of this type [would] prove to be a temporary arrangement," since employment would be "the healthiest of all possibilities." (Tr. 326). Dr. Katz recommended that plaintiff "initiate contact with the Department of Aging and Rehabilitative Services for . . . assistance with job exploration, interviewing skills and a possible position of supported employment." (Tr. 326). On December 5, 2013, plaintiff returned to Dr. Katz for a follow-up appointment, during which plaintiff expressed frustration "due to his

4

unemployment status." (Tr. 328). At that point, Dr. Katz opined that plaintiff "would be best served by at least short term disability support from Social Security given the host of social, emotional and neurocognitive deficits he continues to display." (Tr. 328). However, he urged Mr. Hurst "to continue to pursue a position of highly structured, repetitive and supervised employment where he can work at a reduced pace and without social and interpersonal demands being placed upon him." (Tr. 328).

The state agency psychologists, Dr. Joseph Leizer and Dr. Linda Dougherty, completed two forms regarding plaintiff's mental health: a Psychiatric Review Technique form and a Mental Residual Functional Capacity Assessment form. On the latter form, both psychologists noted that Mr. Hurst has marked or moderate limitations in the categories of "sustained concentration and persistence," "social interaction," and "adaptation," but that he "should be able to perform the basic mental demands of simple and low stress competitive work on a sustained basis." (Tr. 75–77, 88–90). Like Dr. Katz, however, the state agency psychologists also indicated that plaintiff would require a heightened level of supervision as a result of his impairments. When asked to explain, in narrative form, the resulting limitations in the area of sustained concentration and persistence, they stated as follows:

> The claimant can concentrate and persist at simple job instructions and duties, make simple decisions, sustain ordinary routines <u>with occasional extra supervisory help</u>, maintain usual attendance requirements, work around others without being unduly distracted by them and meet simple production requirements.

(Tr. 76, 89) (emphasis added).

The record also contains a report from Dennis Stephenson, a vocational evaluator with the state's Division of Rehabilitative Services. (Tr. 329–330). Based on Mr. Hurst's "overall work performance, in conjunction with his limited social skills and impaired judgment," Stephenson expressed the belief that Mr. Hurst would have difficulty maintaining full-time employment. (Tr.

5

330). He further opined that plaintiff would need "supported employment services" in order to obtain part-time work. (Tr. 330).

The Law Judge ultimately concluded that Mr. Hurst's non-exertional impairments do not render him disabled for all forms of substantial gainful employment or otherwise contribute to an overall disability. In assessing plaintiff's residual functional capacity, the Law Judge gave "significant weight" to the opinions of the state agency psychologists. (Tr. 22–23). The Law Judge also gave "some weight" to Dr. Katz's opinion, noting that it "appears consistent with the claimant's residual functional capacity." (Tr. 23). Likewise, the Law Judge gave "some weight" to Mr. Stephenson's opinion. (Tr. 24). Although Mr. Stephenson did not believe that plaintiff could successfully maintain full-time employment, the Law Judge noted that she "believes that the restrictions in the claimant's residual functional capacity would enable him to sustain full time work." (Tr. 24).

Upon review of the record, the court is unable to conclude that the Law Judge's assessment of Mr. Hurst's residual functional capacity ("RFC") is supported by substantial evidence. In assessing a claimant's RFC, the Law Judge considers "all the relevant evidence," medical or otherwise, to determine a claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545. The Law Judge "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (quoting SSR 96-8p, 1996 SSR LEXIS 5, 61 Fed. Reg. 34,474, 34,475 (July 2, 1996)). Additionally, if the RFC assessment "conflicts with an opinion from a medical source, the [Law Judge] must explain why the opinion was not adopted." SSR 96-8p, 1996 SSR LEXIS 5, 61 Fed. Reg. at 34,478. Ultimately, the Law Judge "must both identify evidence that supports [her] conclusion and 'build an accurate and logical bridge from

6

[that] evidence to [her] conclusion.'" Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (emphasis in original) (quoting Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016)). If the Law Judge fails to adequately explain how she reached conclusions regarding the claimant's RFC, remand is appropriate. See Mascio, 780 F.3d at 636; see also Monroe, 826 F.3d at 188 ("[W]e have held that remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contrary evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.") (internal quotation marks omitted).

In the court's view, the difficulty with the Law Judge's assessment of plaintiff's RFC is that she failed to adequately address the evidence indicating that Mr. Hurst would need special supervision or assistance to sustain employment. The record reveals that Mr. Hurst required the assistance of a job coach to obtain and perform his most recent position with a contract cleaning service, and all of the opinion evidence indicates that additional supervision or assistance would be necessary, either in the form of "occasional extra supervisory help" or "supported employment" services. (Tr. 76, 89, 300, 326). Although the Law Judge afforded "significant weight" to the opinions of the state agency physicians, she failed to explain why the RFC assessment did not include any limitation reflecting the need for extra supervision. (Tr. 22–23). Nor did she explain how the RFC assessment was "consistent" with Dr. Katz's recommendation that plaintiff pursue a "position of supported employment" or a "position of highly structured, repetitive and supervised employment where he can work at a reduced pace and without social and interpersonal demands being placed upon him." (Tr. 328). In the absence of such explanations, the court is constrained to conclude that remand is warranted under the particular circumstances of this case. See Saunders v. Colvin, No. 7:14-cv-00096, 2015 U.S. Dist. LEXIS 128902, at *29 (W.D. Va. Sept. 25, 2015) ("Given Saunders's interconnected challenges of hearing loss and intellectual deficiencies, the ALJ shall provide further explanation on remand as to why he did not accept the

medical recommendations of temporarily requiring a job coach or why such a recommendation does not need to be included in the RFC."); see also, e.g., Goodman v. Berryhill, No. 2:16-cv-00285, 2017 U.S. Dist. LEXIS 93188, at *29 (W.D. Wash. June 16, 2017) (remanding for further proceedings where the Law Judge failed to address a physician's opinion that the claimant may need "extra supervision and encouragement to stay on task"); Rabb v. Colvin, No. 1:12-cv-02666, 2014 U.S. Dist. LEXIS 38695, at *59 (finding that the Law Judge erred in failing to "account for Dr. Telford-Tyler's opinions that . . . Plaintiff may require some initial extra supervision" or "explain why those opinions were not credited").

For the reasons stated, the court finds "good cause" to remand the case to the Commissioner for further development and consideration.[2] If the Commissioner is unable to decide this case in plaintiff's favor on the basis of the existing record, the Commissioner will conduct a supplemental administrative hearing at which both sides will be allowed to present additional evidence and argument. An appropriate order of remand will be entered this day.

The Clerk is directed to send certified copies of this memorandum opinion to all counsel of record.

DATED: This 20th day of November, 2018.

_____
Senior United States District Judge

---

[2] In light of the court's decision to remand the case to the Commissioner, the court declines to address Mr. Hurst's remaining claims of error.